**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | **ORDER DENYING MOTION** |
| ) | **TO REDUCE SENTENCE** |
| vs. ) | |
| ) | Case No. 2:11-cr-105 |
| Gregory Joseph Frohlich, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Gregory Joseph Frohlich's motion to reduce sentence filed on May 26, 2020. Doc. No. 133. The Government responded in opposition to the motion on June 9, 2020. Doc. No. 134. Frohlich filed a reply on June 22, 2020. Doc. No. 135. Frohlich seeks a reduction in his sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("FSA"). For the reasons below, the motion is denied.

**I.      BACKGROUND**

On August 24, 2011, the grand jury returned an indictment charging Frohlich with two counts of transportation of minors with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Doc. No. 1. On October 5, 2012, Frohlich entered an open plea of guilty to Count Two of the indictment. Doc. No. 63.[1]

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office included the following unobjected-to description of the offense conduct:

> 6. Gregory Frohlich's brother, Gerald and his wife, Donna, adopted A.E.F. and A.J.F. (twin[] sisters with a DOB of 9/14/1995) when they were about three or four years of age. They often left their daughters in the care of the defendant, reportedly so they could go play Bingo and after Donna suffered some physical health issues.

---

[1] Count One was later dismissed upon Government motion. See Doc. No. 79.

>Gregory Frohlich often took care of his nieces and had them stay with him. According to police reports, both A.E.F. and A.J.F. are mentally handicapped.
>
>7. On April 4, 2011, Donna Frohlich filed a report with the Grand Forks Police Department on behalf of her daughters alleging the defendant sexually assaulted A.E.F. and A.J.F. This occurred on numerous occasions during the previous two year period beginning in May 2009. Incidents took place at Mr. Frohlich's residence in Grand Forks as well as the Shooting Star Casino in Mahnomen, Minnesota and the Seven Clans Casino in Thief River[] Falls, Minnesota.
>
>8. Interviews were conducted with the victims by Grand Forks County Social Services and with the defendant by law enforcement authorities. Mr[.] Frohlich disclosed a pattern of sexual contact with the victims which included: his hand to their bare breasts in the shower at his residence on numerous occasions; his hand to their bare vaginas in the shower at his apartment on numerous occasions; his foot or part of his foot to A.E.F.'s vagina through her swimsuit in a Jacuzzi tub at the Seven Clans Casino; his finger to their bare vaginas at Maple Lake, near Mentor, Minnesota while "cleaning" them of sand (finger rimming the inside leg holes of their one-piece bathing suits, and coming in contact with their bare vaginas); his penis touching, but not penetrating A.J.F.'s vagina while naked on his bed at his apartment; and his penis touching, but not penetrating, A.E.F.'s vagina while embracing in the shower at his apartment. The victims describe Mr. Frohlich entering the shower naked when they were showering or sitting on the edge or entering the Jacuzzi naked when they were in the tub. The victims did not allege any force used on the part of the defendant but told them not to tell as it may cause their mother to have another stroke (Donna Frohlich had been hospitalized due to a stroke during the time frame the defendant cared for victims). A.J.F. also reported an incident at Mr. Frohlich's residence where the defendant showed her a video of individuals engaging in sexual intercourse and a video of an individual engaging in sexual intercourse with a dog.

Doc. No. 73, ¶¶ 6–8.

On February 5, 2013, Frohlich appeared before this Court[2] for sentencing. Doc. No. 79. The Court adopted the Guidelines calculations in the PSR without change. Doc. No. 81, p. 1. With a total offense level of 38 and a criminal history category of I, Frohlich's guideline range was 235 to 293 months of imprisonment. Id. The Court departed and varied downward due to Frohlich's

---

[2] The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

diminished capacity and "pronounced limitations in intellect and judgment" and sentenced him to 168 months of imprisonment.  Doc. Nos. 80 and 81.

The Bureau of Prisons ("BOP") placed Frohlich at FCI Sandstone.  Now 64 years old, Frohlich has a projected release date of August 25, 2023.  Frohlich sent a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI Sandstone, which was received on March 30, 2020.  Doc. No. 134-1.  On April 8, 2020, the warden denied Frohlich's request.  Doc. No. 134-2.

## II.  DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3]  18 U.S.C. § 3582(c)(1)(A)(i).  The 18 U.S.C. § 3553(a) factors also must support the reduction.  Id.  The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant.  See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### A.  Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf.  With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

[3] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met.  See 18 U.S.C. § 3582(c)(1)(A)(ii).  Frohlich is 64 years old, so this avenue for relief is foreclosed.

3

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The warden at FCI Sandstone received Frohlich's compassionate release request on March 30, 2020. More than 30 days have lapsed since then. Therefore, Frohlich has met the statute's exhaustion requirement, and the Court will proceed to the merits of his motion.

### B.    Extraordinary and Compelling Reasons

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13. The policy statement itself largely mirrors the compassionate release statute's language. See USSG § 1B1.13(1)-(3).

More pertinent here is Application Note 1 to the policy statement. So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release. USSG § 1B1.13(2); id. app. n.1. The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively. See id. app. n.1(A)-(C). Subsection (D)— the catch-all provision—authorizes a sentence reduction when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)." Id. app. n.1(D). Frohlich's motion appears to rest on subdivision (D), as he does not point to a qualifying serious medical

condition, a serious deterioration in health because of the aging process, or the need to take care of an incapacitated spouse or a child left without a caregiver.[4]

The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director—clearly no longer the case. See USSG § 1B1.13. Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges. See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019). Other district courts disagree. See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written. United States v. Rivera, Case No. 1:16-cr-00239, Doc. No. 61 (D.N.D. Nov. 25, 2019). Nevertheless, even assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this motion, Frohlich does not meet the burden to demonstrate that such reasons exist here.

While sympathetic to Frohlich's concern regarding the effects of COVID-19 in the federal prison system, the Court does not find that his circumstances clear the high bar necessary to

---

[4] Frohlich does mention his desire to take care of his brother who "has a bad heart and debilitating health," Doc. No. 133, p. 2, but such a family circumstance does not qualify under subdivision (C).

warrant a sentence reduction. As the Third Circuit Court of Appeals recently commented, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). District courts have concluded similarly. See, e.g., United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .").

FCI Sandstone has yet to report a confirmed case. See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 24, 2020). While Frohlich's age is close to the threshold age at which a higher risk for severe illness from COVID-19 arises, he has not mentioned—let alone substantiated—any diagnoses of underlying medical conditions that the Centers for Disease Control has identified as placing one at higher risk for severe illness. See People Who Are at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 24, 2020). Finally, the BOP has undertaken an extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities, including screening, visitation, and social distancing measures. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 24, 2020). Accordingly, Frohlich's generalized assertions regarding the risk of contracting COVID-19 while incarcerated do not present an extraordinary and compelling reason for a sentence reduction.

### C. Other Statutory Requirements

In addition, even if Frohlich demonstrated an extraordinary and compelling reason for a reduction exists, he has nonetheless failed to demonstrate that he is not a danger to the safety of

the community or that he otherwise merits release under the 18 U.S.C. § 3553(a) sentencing factors. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Moreover, this Court must consider the § 3553(a) factors as part of its analysis. 18 U.S.C. § 3582(c)(1)(A).

The Court is not satisfied that Frohlich's release is consistent with public safety or with § 3553(a). This was a serious offense committed upon vulnerable victims. Frohlich has not provided any sex offender treatment records or any other evidence of rehabilitation to indicate that he is no longer a danger. Further, because of the nature of the criminal conduct, the BOP has determined that Frohlich is not eligible to be transferred to home confinement. Doc. No. 134-3. This decision reflects the BOP's expert judgment that it is not in the public interest to release Frohlich at this time in light of his record and individual circumstances.

### III.  CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Frohlich's motion to reduce sentence (Doc. No. 133) is **DENIED**.[5]

**IT IS SO ORDERED**.

Dated this 25th day of June, 2020.

> */s/ Peter D. Welte*
> Peter D. Welte, Chief Judge
> United States District Court

---

[5] The Court also declines to appoint Frohlich counsel. While the Court has appointed counsel for other inmates seeking compassionate release upon the request of the Office of the Federal Public Defender ("FPD"), the appointment of counsel for the purpose of preparing a compassionate release motion is neither required by the Constitution nor by statute. Such a request was not made by FPD in this case, and the Court finds that the interests of justice do not require the appointment of counsel for Frohlich.